Madam, call the case. 11-16-60 Pinkwood v. Royall v. Hannan I should indicate to you I don't use the timing lights, but I'm going to hold you to the time. Thank you, Your Honor. May it please the Court. Counsel. My name is Kevin Cassidy. I represent the appellant, Mr. Royall Hannan, in this matter. Your Honor, there are three issues in the briefs, and I'm willing to talk about any of those issues, but I'd like to begin with argument three. Did you say your name was Kevin Cassidy? Yes, Your Honor. I'd like to begin with argument three, which is the claim that the trial court erred in not suppressing Hannan's statement as a violation of Miranda, where he was interrogated while in custody, made an incriminating statement, but was not given the Miranda warnings. Your Honor, as our reliance on Miranda suggests, this is a Fifth Amendment claim, not a Fourth Amendment claim, and the Fourth Amendment analysis just doesn't come into play. No one is suggesting that the Fourth Amendment was violated here when the police, pursuant to executing a search warrant, detained the occupants of the apartment and handcuffed them. We're not seeking to suppress the gun. We're not claiming any Fifth Amendment. Well, let's assume for a minute that he was actually in custody at the apartment. Where is there any evidence that the inquiry without the Miranda warning was merely a subterfuge? Your Honor, I believe you're referring to the Siebert? The question is over. Lopez. Lopez, yes, Your Honor. Yes, please. So as Your Honor points out, there is a second statement here that under Lopez, the State, well, as Your Honor says, if the State deliberately or the police deliberately circumvent Miranda by questioning first, Miranda Isaac second, and getting a second and a couple for a statement, that is a violation, and that second statement was false. Under Lopez, the Court said there's three, well, it says we understand that the police are never going to admit to deliberately violating Miranda. And, of course, that issue wasn't reached here because the first statement was never suppressed. So the Lopez issue didn't come up. But Lopez does tell us a lot about how to determine deliberateness. It looked to a Ninth Circuit case, Williams, and it set out three factors to determine whether the objective test of whether there was deliberateness. I won't say to you what the Seventh Circuit says every time someone cites a Ninth Circuit case to them. Go ahead. And maybe it was surprising that Lopez relied on Williams. But, well, I think the Ninth Circuit was simply reiterating what was in Siebert. And then the three factors are these. The continuity of police personnel is one factor. Here we have the same officer that got the original statement interrogating him for the second statement. The overlapping content of the two interrogations is a second factor, another factor. And here they're both about the gun. First he's asked, whose gun is this? Mr. Hanna says it's mine. Later he's asked, where did you get the gun? But is there a change in the location of the questioning here? And that would go to the third factor, Your Honor, which is timing, setting, and completeness of the first and second. So there is a change in location here. The second statement occurs at the station. The timing is only two hours, perhaps two and a half hours later. In Lopez, that was considered too close in time to be a substantial change. And we're very close to Lopez. Lopez was two hours. Here it's at most two hours and 40 minutes, but probably less because the search began at noon and the second statement, Miranda warning, took place at 2.40 p.m. And then the completeness of the first interrogation is within that third factor. And here it was complete. As soon as Mr. Hanna admits the gun is his, the evidence is there. Who was in the room when the officer asked, whose gun is this? Exactly who was in that particular room is I don't think clear. We know there were 67 officers in the apartment. No, no, no. Who other than the police were in that room? Angelica McKnight was also there. So you've got two people in the room, and the officer doesn't go up to your client and say, is this your gun? He says to both people, whose gun is this? To which your guy says, it's mine. So now the statement that's taken later after he's Mirandized is a statement taken of a convicted felon to determine whether he was actually in possession of a handgun. Now, when he asked him the first time, why isn't it fair to assume he's just trying to figure out whose gun this is? Well, even if he's only – we don't know – even if we assume that he's only trying to determine whose gun this was, this was contraband. If I ask people whose drugs are these, that's a statement that's – Why is the gun contraband? Were they both convicted felons? Well, the gun, it was illegal in Chicago to have a handgun.  It's not illegal to have a handgun necessarily in Chicago. If you've got a firearms owner identification card, the gun is registered with the police. There's nothing illegal about it. It's not necessarily a handgun. It's not necessarily contraband per se. Well, I think at the time this occurred, as we all know, the Heller case, right? It's 2008. That violated the ordinance. Exactly, Your Honor. Chicago had that ordinance that was subsequently, maybe a month or two after this, struck down on McDonald's. But at the time that this was happening, there was an ordinance. I believe that, according to McDonald's, the Supreme Court said – it effectively said a handgun was illegal in Chicago unless you may be a police officer. So it was – and they used the Supreme Court's – Unless it was registered before a certain date. And that may be – I think they viewed the ordinance as almost a complete fad. But – and I'm not – but you're correct that there perhaps are some valves, safety valves there that come into play. But the interrogation test is whether the question was reasonably likely to elicit an incriminating response. And here, I think police officers in Chicago know when they ask who owns the gun – again, they're searching a – they're conducting a drug search of a house that's believed to be running a drug operation. They expect an incriminating response, and they got it here. So I think the interrogation test is met. I think the custody test is met. And then under Lopez, I don't think the state can show – I know there's evidence. The Lopez facts, I think, weigh in finding that this was an improper question first, Miranda, second interrogation. So – and that's all the state has is the statements. There's no evidence in this apartment. So the fact that he – you say two hours and 40 minutes later that he decided again to not only admit the gun was his, but he gave details, you know, where he got it and how long he had it. Why did – I think a reasonable person can say – can understand that sitting in the living room with police officers with guns drawn and your handcuffed, that atmosphere is not one where he would feel that he could decline to answer. But what about, you know, almost three hours later, he's adding detail so we'd overlook that as well? I don't think he should overlook it. I think Lopez gives instruction on this, too, and Siebert. The question is whether there's something intervening. Yeah, time intervening. Time. Time, location. Granted, the officers were the same, but he was at a different location. He had, you know – The location. Even if he's a slow thinker. I mean, three hours later, you start thinking, maybe I shouldn't have said that. I'll keep my mouth shut. You know, the judge pointed – the trial judge pointed out that he could have kept his mouth shut. Certainly not – maybe not in the living room, but by the time we get to the police station almost three hours later, why not keep your mouth shut? Well, I think I have a couple of points there. One of the curative measures that Lopez and Siebert talk about is being told that, you know what, we can't use that first statement against you, so now we're Mirandizing you. We'd like to speak to you. Do you wait, Miranda? We don't believe – there's no evidence that was done here. The time is – you know, in two hours was not enough time in Lopez. There is the break in location, Ron, that's correct. But I just want to back up and situate this question in the broader context of error. This is a fully preserved error, the first statement, litigated prior trial, renewed trial, and the post-trial motion, and it's a constitutional violation. So the state has to prove – for there not to be a new trial, the state has to prove, beyond a reasonable doubt, under Chapman v. California, that this second statement not only would have come in, but would have carried the day. And it's – you know, on this record, I don't think they can make that showing. We don't – the record suggests these factors may weigh one way or the other, but they can't prove beyond a reasonable doubt that this was definitely admissible. Can I ask you a question? Yes, sir. You are taken into custody in an apartment where a gun is found, and you say, it's my gun, and I bought it in such-and-such a place. How do you get found not guilty on that one? I'm sorry. I mean, you don't – come on. They don't – they didn't need the first statement. They had the second one. The second one said, it's my gun. He's found in an apartment where the gun is located, and then he tells them in the second statement where he got the gun. And how long he's had it. And how long he's had it. How do you get found not guilty on that evidence? Well, the state office has proved that that would absolutely have come in, beyond a reasonable doubt. And the reason – but why wouldn't you – sorry. Go ahead. So assume the first statement is suppressed. And the second statement is the result of that. You've already admitted the gun was yours. What else – you can't – you don't know that this is a completely new interrogation when they haven't told you it is. And when you're simply reiterating and somewhat expanding on what you've already told, you're already in the – you know, you're already in the suit. And I want to also recall that the Court here recognized that there could be motives for a defendant who had fallen on his sword, so to speak. Again, he was with this woman in a bedroom with a child. She's a subject. But he doesn't get a pass for that. You know, he said the gun was his. And I'm worried about the second statement. I give you the first one. I think that he was in custody at the first time, regardless of what the state says. If you're sitting handcuffed with police officers with guns drawn standing around you, you are in custody. So he was in custody. That was a custodial interrogation, in my opinion. However, the second time, it's almost three hours later, they took him to a different place, and he basically not only admitted that the gun was his, but elaborated and filled in other details that he didn't really need to fill in. How do you get, as Justice Hoffman asked, how do you get around that? Assuming we threw out the first statement and we pretended it never happened, what do we do with the second one? Two things. We suggest that the state has to get around it. But I can see your concern. There's nothing that prevents this Court from demanding for a hearing on what exactly occurred in that second statement. Because, again, this wasn't litigated because the first statement was not suppressed. So the Court really, no one really needed a second statement. Well, the second statement was introduced, was it not? It was, Your Honor. It was. Was there an objection to it? The objection was to the first statement. Was there an objection to the second statement? Well, once the first statement comes in, the second statement is only inadmissible if you throw out the first statement. Potentially inadmissible. No. Potentially. I'm not following that logic. What? If the first statement falls, then the question becomes a CBER question, whether the second statement is admissible under CBER. And that wasn't litigated because the first statement wasn't suppressed. It would have been good to, you know, there's such a thing called making the record and, you know, protecting your issues for appeals. So it probably would have been a good idea to object to the second statement as well. Because in my view, that's the statement that's creating the problem for you, not the first statement. Well, I don't recall if there's a specific objection to the second statement. But it seems like I've proved a constitutional error on the first statement. So, again, Chapman v. California says the burden is now on the State to prove without a reason that this was harmless. The burden is no longer on my shoulders. But if the burden is on my shoulders, Your Honor, then maybe we could have a hearing on were there curative measures here. That's something we would be amenable to. Your Honors, I feel like I may be approaching the limit of my time. No, no, I have another question. I want to talk about the exercise, your third issue. Can you speak to that a little bit? Is this the disclosure issue, Your Honor? No, no. Whether or not he had control over whether the State proved beyond a reasonable doubt that actually denying the motion to suppress the incriminating statement and your argument had to do with, you know, all right, it was tied into your corpus delicti argument. Did he have control over it? It was between the mattress, although he admitted that it was his. It's all tied in with your first issue. I see, Your Honor, yes. But I'd like you to talk about that a little bit because we spent a lot of time in your brief, and it seems to me that that is closely related to your first issue. Thank you, Your Honor. Throughout the brief, we try to point out that there's nothing other than a statement. The statement is connected to the gun. It's not his apartment. He doesn't live there. His belongings aren't shown to be there. His fingerprints are not on the gun. He's not the target of the search. The gun is not in plain view. So all of these things just emphasize that the statement is the only evidence, and so the corpus delicti argument. Wait a minute. Isn't the fact that he was found in an apartment where the gun was located evidence? Yes, Your Honor, it's evidence. So it's something more than just his confession. I think if the gun was in plain view, that would be absolutely correct and we wouldn't be making a corpus delicti argument. But because it's not in plain view, there's nothing that ties him versus. This is all tied into that second statement, Mr. Cassidy. You know, if we assume that the first statement was a mistake because he was scared, if he kept his mouth shut as to the second one, then you would have a strong argument that, okay, the gun was between the mattresses, so nobody would have seen it, except, you know, once the cops found it. If he kept his mouth, he doesn't live there. There was no evidence that he lived there. He had any clothes there or anything. The male jeans that they found, that could have been the woman's brother's jeans. Who knew? Anyway, the reason I ask you, because I think that's really closely related to your first issue, and I don't see how you get around that. The two of those are tied together, in my view. Your Honor, I think you hit the nail on the head. Without the first statement, the second statement never gets elicited. This is the persuasiveness or the effectiveness of the question first, Miranda second, procedure that was denounced in Skeper. That's why, you know, that's the whole point of the procedure is to pull you in, get you to incriminate yourself, then Mirandize you, and then get it all nice and proper for the court. And it worked, in this case, to pick a child. Your Honor, is there any further questions? Thank you. Thank you. State. Good morning. May I please report to the counsel? My name is Anne McGats. I'm an assistant state's attorney, and I'm here on behalf of the people. Your Honor, addressing first issue three, regardless of how this court rules with respect to defendant's first pre-Miranda statement, the second statement made post-Miranda is admissible, and this court can affirm on any basis supported by the record. Your Honor, in this case, the second statement is admissible because there is no evidence, or reasonable inferences to draw from the evidence in the record, is that Officer Dennis did not attempt to circumvent Miranda deliberately, and he did not consciously employ a question now, warn later. With respect to which statement are we talking about? The second statement would be admissible because he did not. No, when you're saying Officer Dennis didn't, all of what you just said, are you talking about that with respect to the first statement or the second statement? I'd like you to break those up because I see them differently. With respect to the first statement, Your Honor, we would maintain that the trial court properly denied defendant's motion to suppress, as under all of the circumstances that were in place. And what's that? What were those circumstances? Those circumstances were that Officer Dennis was executing the search warrant. The target of the warrant was Angelica's apartment. Defendant knew that because Officer Dennis testified. I know, but when Officer Dennis comes out and asks whose gun is this, they can't reasonably assert that they're in fear of their safety because both of the occupants of the apartment are handcuffed in the living room under armed guards. So what's the purpose of interrogating other than to elicit an incriminating statement? Under these circumstances, Your Honor, What circumstances, Ms. McGarrett? These circumstances would be that they're in the process of executing the search warrant. The defendant knows that he's not the target of this warrant. He knows Angelica is. How does he know that? Officer Dennis testified that when he arrived, he told defendant and Angelica why he was there. And once they were removed from the bedroom, yes, they were handcuffed. However, handcuffing alone doesn't per se put somebody in custody. They were placed together. Oh, come on. Yes, you say he's not in custody when he's handcuffed with police officers with guns drawn. I think sometimes it would be useful to concede those things that are really obvious. You are not seriously telling me that he wasn't in custody. Are you saying that? I hope that's not what you're saying. Your Honor, under these circumstances, it can be a basis in the record to conclude that when the defendant and Angelica are handcuffed, they were seated together on her couch. They haven't been removed from the apartment. With police officers around them with guns drawn, were they free to leave? Let me ask you that. They were not free to leave. They were certainly seized and they were detained. But this is a temporary detention depending on the completion of the search warrant. Well, conceding that point, how is the statement admissible? The first statement, Your Honor? Yes, the first statement. The first statement would be admissible because under these circumstances, this was an on-the-spot, probably spontaneous question on behalf of the officer. And at that point, once he asked that question and received an answer, he stopped. And the circumstances changed. The officers formally arrested him. They gave him a ride in a police car. They took him to Area 2. He was now separated from Angelica. It wasn't the original question that whose gun is this that was posted to people, including defendant, and defendant knew at that time that he was not the target of the warrant. And he also knew at that time the officers didn't know whose gun it was. He was not compelled to answer. The purpose of Miranda is to prevent somebody from making a response. Ms. McGatts, are you saying that the case law suggests that under certain circumstances, the defendant may not feel that he is in a situation where he can't respond? When you're sitting in a small room handcuffed with officers around you with guns drawn, are you saying that he felt that he could have resisted and not answered? Is that what you're saying? Your Honor, our position is that this wasn't a situation where Miranda was required. Okay, all right, move on. Even if there was a Miranda violation, there's no evidence that Officer Dennis intentionally tried to circumvent Miranda. Well, so that's your argument that even if we suppress the first statement, the second statement is good because he was Mirandized and there's sufficient evidence to convict him. Correct. Regardless of how this Court rules with respect to the first statement, the second statement is admissible, and that is sufficient to convict. Whose burden is it? The argument of your opponent is that your burden is to prove that he did not circumvent Miranda. That's correct. It is the people's burden in the context of an attenuation issue to prove the attenuation. However, that burden, and granted, the burden is not cited in our brief, the burden is by clear and convincing evidence, and I do have case law to support that burden. It's a well-established burden of proof for the people. Tell me right now, in your own words, what do you think that evidence is, as outlined in your brief? There's a change in circumstances between the first statement and second statement, such that a reasonable person in a defendant's situation could reasonably understand this investigation had taken a new turn. They went from executing a warrant at Angelica's house, a place where he was there on his own volition and felt comfortable, and he was with Angela, now he's at a police station, several hours, a couple hours, he's been transported there, he's placed in an interview room, Angelica's no longer with him, and he receives his Miranda rights. And the defendant at trial has not ever suggested that that statement was involuntary. He received his rights. There's no indication in the record that he didn't receive all his rights. As your opponent pointed out, did anybody say to him, you know, that first statement that you gave us, that you own the gun, we really can't use that, and we should have given you your Miranda rights, but we're giving them to you now, do you waive that right? Did anybody suggest that to him? I mean, he's a criminal, it doesn't suggest he knows the law. Criminals often do, but I don't know whether this one does. Did anyone suggest to him that the first statement was probably no good, so we're giving you your Miranda warnings now, do you waive them? Did anybody say that to him? They did not, but that is one of several factors that should be considered. I know, but that's the one I'm asking you about. There's no evidence in the record that he was told that. Okay. And at that time, he made a more detailed statement. And again, this was in response. Could it be that he didn't know that he couldn't elaborate because he had already told them that the gun was his and nobody explained to him that there was no need to have told him that? The standard is whether a reasonable person in his situation at that time would have understood that the investigation took a new turn and that he didn't have to continue talking. Well, you obviously think the reasonable person would understand that. Your opponent says no, no reasonable person would have understood that without having some explanation as to what took place before having been inadmissible. So, I mean, obviously you have different views. That's why you're here. Well, there's multiple factors to consider, and that's one of the factors to be considered. The other factors have been discussed, the change in location, the change in time. This is a different type of question. This is an accusatory question, not a general question. Who owns a gun to two people? How is this question more accusatory than the first question? This was directed at the defendant. It was not directed at two people. Does that make it accusatory? Well, the nature of this question was to defendant. Where did you get this gun? Because he had already said that it was his. So, of course, they wouldn't ask somebody else since he had already, I mean, let's be reasonable here. He had already admitted that it was his. So, of course, who else are they going to ask about it? Which we have, right? Well, at that time, the style of the question changed, the circumstances had changed, and it's our position that a reasonable person in his shoes at that time would understand that. Important, I think, to bring up is the Lopez case, and that is the case that set forth the factors to consider whether or not the officer vectored deliberately and if the second statement could be admissible. This case is so distinct from Lopez. In Lopez, we were dealing with a juvenile. He was removed from his house, taken to a police station, placed in an interview room, suggested that he'd been implicated in a crime, and then hours pass, four to five hours pass. The same officers come back. He's been in that room alone the entire time. They tell him again he's been implicated. They tell him that his co-defendant has implicated him and confessed himself. These are all very more hallmarks of a true interrogation technique. And once he makes that admission, they arrest him, and then he makes a statement. This is much different than a one-on-the-scene, probably spontaneous question on behalf of an officer. Ms. Bigas, let's sort of segue over to the corpus delicti issue. You know, we have this doctrine in the law that says you can't convict someone based solely on their own confession. What do we have in this record other than conjecture? That he was in possession of this gun in a house that wasn't his house. We have the fact that he was sitting on a bed, and the gun was in between the mattress and back screen and the bed in which he was sitting. And under LERA, all we need to show is independent corroborating evidence that tends not beyond a reasonable doubt, but just tends to show the commission of a crime that was closely related to the charged offense. So the gun is between the back screen and the mattress, right? Yes. So is that visible to someone sitting on the bed? That would be correct. So you basically go sit on the bed and not know the gun's there? Correct. Okay. However, it was immediately accessible to him, a convicted felon, sitting on the bed with Angelica and a child, and the gun was in between the mattress and back screen. And the fact that this gun was there in an area immediately accessible to him and he's not allowed to have a gun tends to show the commission of unlawful use of a weapon by a felon. Your Honors, again, people maintain that defendant's second statement is admissible, regardless of how this court rules on his first statement, and that this court can affirm on any basis. And if this court were to find that the record is not complete enough to make a determination on the admissibility of the second statement, we would ask if this court doesn't affirm the defendant's conviction to remand the case for just a very limited period regarding the attenuation issue. Thank you. Rebuttal. Thank you, Your Honors. Just maybe a couple points on purpose. I don't think there's evidence that the gun was immediately accessible. I think the police had to pick up the mattress. I don't understand the corpus delicti issue at all. Okay. This man didn't walk into a police station and say, last Wednesday I had a gun. They have no gun. No one saw him with it. And then they attempt to convict him based on that confession. You'd be right. That confession, there's nothing else there. This guy's found in an apartment with a gun. That's evidence. And then his confession corroborates. So, I mean, so where's the corpus delicti issue? Well, as this court said in Harris, in Harris, which we rely on completely, there was a gun in Harris as well. But there was nothing to corroborate that that gun was ever on the public land. Here there's a gun. But there's nothing to corroborate that that gun was tied to a client other than the confession. And Lara says that the confession, the corroborating circumstances have to tend to connect the defendant with the crime. And the only thing here we have is the confession. But basically we're making a comparison. He was in the apartment. And he wasn't. And the gun was in the apartment. Okay. Go ahead. And then just a couple points about the Siebert issue. Just to point out, my client's not a career criminal. He does have a prior felony conviction in 2001 for P.S. 7B, possession of stolen motor vehicle. But I believe he was working at the time of this offense. So he's not someone that has this knowledge of what it's like to be interrogated at the law. He's not a career criminal. And just one final point. Whether the officer intended to say to himself, I want to circumvent Miranda, Lopez said we don't need to show that. It's an objective test. I have another question. Your opponent did a pretty good job of distinguishing this fact, this case, from Lopez. Just briefly, can you compare it to Lopez and say what factors are the same? Your Honor, the counsel was talking about Lopez's discussion of whether that person was incusted. Lopez, Mr. Lopez, was not handcuffed. Went to the station about it. We have shown him incusted. I'm relying on Lopez for the Siebert issue. The defendant, Lopez, made an unwarranted statement at 6 p.m. and then was Mirandized and made a warranted statement at 8 p.m. And it's those two hours that are key to our argument about Siebert. But custody here is clear. All the cases are of the same effect. If you're asked questions while handcuffed with numerous officers around you, that's custody. That's Kowalski, New York, U.S. Supreme Court. Thank you, Your Honor. Counselors, thank you. The matter will be taken under advisement. Court is adjourned.